UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

FILED
APR 17 2006

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| METZ FARMS, a Partnership, | \* | CIV. 05-4058 |
| Plaintiff, | \* | |
| vs. | \* | MEMORANDUM OPINION AND ORDER |
| FISHER SAND & GRAVEL CO., a North Dakota corporation, | \* | |
| Defendant. | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Pending are cross-motions for summary judgment. Metz Farms moved for partial summary judgment on the issue of liability only (Doc. 34). Fisher Sand & Gravel Co. moved to dismiss the complaint (Doc. 31).

## JURISDICTION

Plaintiff is a partnership whose place of business is in Hanson County, South Dakota. Defendant is a corporation whose principal place of business is in North Dakota. The amount is controversy is alleged to be more than $75,000. Jurisdiction is proper pursuant to 28 U.S.C. § 1332.

## DISCUSSION

### A.   Facts

Metz is a family partnership organized pursuant to South Dakota law. The partners inherited and own property containing a quartzite quarry in Hanson County, South Dakota. The land was used for farming before being mined. Fisher is a closely held North Dakota corporation which mines and sells aggregate for a variety of purposes. On January 28, 1986, Metz and Fisher signed an

agreement which allowed Fisher to mine and excavate rock, sand, and gravel from the Metz quarry. Fisher could annually renew the contract for twenty years by paying a $3000 annual advance royalty. The agreement is a single page[1] on a form furnished by Fisher. In addition to the annual royalty Fisher agreed to pay Metz 30¢ per ton for mined product. The agreement included an escalation clause which was separately typed into the form agreement, i.e. the language which contained the escalation clause was not form language on the printed form: "[t]he price per ton for material will be adjusted per the consumer's price index at the end of each 5 years that this lease is in force."

Mining operations began in 1987 and were continuous at least until November 2003. In November, 2003, Fisher notified Metz the mining operations would be terminated. Only then was it discovered the escalation clause had been overlooked. Metz sued Fisher for breach of contract to recover money which would have been paid if the escalation clause had not been overlooked. Fisher contends there is nothing more owing to Metz under the contract.

### B. Claims of the Parties

#### 1. Metz Farms

Metz contends Fisher breached the contract as a matter of South Dakota law. Metz asserts Fisher admits the 30¢ per ton was not increased at the end of five year intervals during the life of the contract as required by the escalation clause. Metz asserts the consumer price index increased during the pertinent time frame. Metz, therefore, was underpaid as a result of Fisher's breach of contract and is entitled to partial summary judgment in its favor on the issue of liability, leaving only the issue of damages for trial.

---

[1]There is an attachment as a second page following the signatures on the single page agreement. The attachment contains a legal description of the real estate without other significant words, other than the words "attachment" and a second set of signature lines.

2

### 2. Fisher Sand & Gravel

Fisher first asserts the escalation clause is indefinite and therefore cannot be enforced. Additionally Fisher contends Metz's claim is barred by the statute of limitations, waiver, estoppel, and laches.

### 3. Analysis

#### (a) Issues

The issues are:

(1) Is the contract term "consumer price index" ambiguous and enforceable, or is "consumer price index" indefinite and unenforceable?
(2) If the escalation clause is enforceable, does the statute of limitations bar recovery?
(3) If the statute of limitations does not bar recovery, is recovery barred by waiver, estoppel, or laches?

#### (b) Summary Judgment Standard

"Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." Maziarka v. Mills Fleet Farm, Inc., 245 F.3d 675, 678 (8th Cir. 2001).

#### (c) The Escalation Clause is Enforceable

Several principles of contract law are applicable. The interpretation of a contract is a question of law for the court. Yarcheski v. Reiner, 669 N.W.2d 487, 495, (S.D. 2003). The proper interpretation of a contract must give effect to the intention of the contracting parties. Ziegler Furniture and Funeral Home v. Cicmanec, 709 N.W.2d 350, 355 (S.D. 2006). If the intention of the parties is clearly manifested by the language of the contract, it is the duty of the court to enforce it. Pesicka v. Pesicka, 618 N.W. 2d 725, 727 (S.D. 2000). A contract is interpreted according to the

3

natural and obvious meanings of the words without resorting to subtle, forced, strained or unusual meanings for the benefit of one party or for the purpose of either limiting or extending their meanings. Vollmer v. Akerson, 688 N.W.2d 225, 228-229 (S.D. 2004). Whether the language of a contract is ambiguous is a question of law. Ziegler at 355. When the meaning of the contractual language is plain and unambiguous, construction is not necessary. Id. A contract is ambiguous when application of rules of interpretation leave a genuine uncertainty as to which of two or more meanings is correct. Ziegler at 355. A contract is examined as a whole giving meaning, if possible, to all its provisions. Yarcheski at 492. The court cannot make a contract for the parties that they did not make themselves. Knapp v Breeding, 551 N.W.2d 535, 537 (S.D. 1959). When a contract is clear and unambiguous, a court cannot go beyond its provisions. Gettysburg School District 53-1 v. Larson, 631 N.W.2d 196, 200 (S.D. 2001). Contracting parties are held to the terms of their agreement and disputes cannot be resolved by adding words the parties left out (Gettysburg at 200-201) to make the contract mean more than its words plainly declare. Gettysburg at 201.

Parol or extrinsic evidence may not be heard to vary the terms of a written instrument. Christiansen v. Strand, 132 N.W.2d 386, 388 (S.D. 1965). Parol or extrinsic evidence may be heard, however, to explain what the parties meant by what they said, but not to show they meant something other than what they said. Christiansen at 389. When a contract is on a form supplied by one of the parties, ambiguous language in it should be construed most strongly in favor of the other party. Hicks v. Brookings Mall, Inc., 353 N.W.2d 54, 56 (S.D. 1984). In construing a contract where ambiguities exist, established trade customs and usages may ordinarily be considered. Mash v. Cutler, 488 N.W.2d 642, 647 (S.D. 1992). The court does not "pause to determine" and reform a contract to fulfill the intention of the parties where sufficient notice has been given in the pleadings that equitable relief is desired. Eggers v. Eggers, 110 N.W.2d. 339, 343 (S.D. 1961) and Ziegler, 709

4

N.W.2d at 359.

This escalation clause is either indefinite and unenforceable as Fisher postulates or it is ambiguous and enforceable, to be supplemented with extrinsic evidence to explain what was meant when the parties referred to the consumer price index, as Metz contends. The words in the escalation clause "[t]he price per ton for material will be adjusted per the consumers price index . . ." clearly manifested the intention of the parties to adjust the price per ton according to a calculation tied to the consumer price index. It is the duty of the court, therefore, to enforce the intention of the parties clearly manifested by the language of the escalation clause. Pesicka v. Pesicka, 618 N.W.2d 725, 727 (S.D. 2000). The price per ton should have been adjusted at the end of each five years, therefore, by a calculation tied to the consumer price index.

It is the calculation tied to the consumer price index which poses the problem. Since there is more than one index, and since there is more than one geographic region from which the consumer price index is determined by the U.S. Department of Labor, Fisher relies on two cases to argue the escalation clause is too indefinite to enforce. Johnston v. First National Bank and Trust Company of Joplin, 624 S.W.2d 500, 503-504 (Mo. App. 1981); Seattle-First Nat'l Bank v. Earl, 565 P.2d 1215 (Wash. App. 1988). Fisher argues the court cannot make a contract for the parties which they did not make for themselves, and the court cannot add words to the escalation clause which the parties themselves did not use.

Both Johnston and Seattle are distinguishable from the Metz/Fisher escalation clause which refers the "consumer price index"— a general misnomer used to describe the indexes prepared by the United States Department of Labor. The Johnston case from Missouri referred to a city average. The Seattle case from Washington referred to a cost of living index for the City Spokane, a non-

existent index. The same Missouri Court of Appeals which decided Johnston later distinguished it and ruled the "cost of living index" portion of an escalation clause should be given its usual and ordinary meaning. Satterfield v. Layton, 669 S.W.2d 287, 289, (Mo. App. 1984). "When used without qualification, [the "cost of living index"/consumer price index] is generally taken to mean the national average figures." Id. at 288.

Duenke v. Brummett, 801 S.W.2d 759 (M.O. App. 1991) is also instructive. The Duenke trial court determined it was a mutual mistake when the parties misnamed the index the "United States Bureau of Labor Statistics Living Standard Index." The judge reformed the escalation clause to mean the Consumer Price Index for all Urban Consumers after receiving extrinsic evidence about the disputed phrase.

A Utah case is particularly persuasive. Barnes v. Wood, 750 P.2d 1226 (Utah App. 1988). Barnes, too, distinguished Johnston. Barnes decided the disputed escalation clause was ambiguous and enforceable, as distinguished from indefinite and not enforceable. Barnes decided the term "United States Cost of Living Index" is merely a general description of the index to be used rather than the name of a specific index. The trial court in Barnes did not rewrite the escalation clause for the parties when it received extrinsic evidence to determine the parties' intent about the ambiguous term. The parties intended to use an index that covered the United States as a whole, not excluding any items or sub-regions.

In its prayer for relief, Metz requested "such other relief that the Court deems just and equitable" (Doc. 1). Equitable relief (reformation of the contract to explain what the parties intended by the ambiguous term "consumer price index") is therefore available to Metz Farms. Ziegler, 709 N.W.2d at 359. Even a pleading which fails to conform in detail to pleading requirements, but which otherwise informs the court and counsel that equitable relief is requested, is sufficient to justify

6

equitable relief without further pleading. Eggers v. Eggers, 110 N.W.2d at 343. This escalation clause is ambiguous because "consumer price index" could be understood in more than one sense to an objective, reasonable, intelligent person. Carr v. Benike, Inc., 365 N.W.2d 4, 6 (S.D. 1985); Ducheneaux v. Miller, 488 N.W.2d 902, 909 (S.D. 1992).

Even without construing the contract most strongly in favor of Metz as a result of Fisher having furnished the form on which the ambiguity appears, the ambiguity is not so indefinite as to render it impossible to fulfill the parties' clear intention about adjusting the per ton price by using the consumer price index. Both parties will be allowed to introduce parol and extrinsic evidence to establish the parties intention, or to establish the custom or usage in the trade when the term "consumer price index" is used in an escalation clause. Mash v. Cutler, 488 N.W.2d 642, 647 (S.D. 1992); Korte v. O'Neill, 148 N.W. 12 (S.D. 1914); and Clark v. Bergen, 59 N.W.2d 250 (S.D. 1953).

### (d) The Statute of Limitations Bars Damages Which Occurred More than Six Years Before April 27, 2005

The South Dakota statute of limitation for contract claims is six years after the cause of action shall have accrued. S.D.C.L. § 15-2-13(1). Fisher contends Metz's cause of action accrued in January, 1991, more than six years before the lawsuit was commenced. February 1991 marked the end of the first five years after the contract was signed on January 28, 1986. It was then the escalation clause could have been triggered for the first time. Fisher argues Metz did not start its lawsuit until April 27, 2005, nearly fifteen years after the cause of action accrued. Fisher cites Goldman Copeland Associates v. Goldstein Brothers & Co, 702 N.Y.S. 2d 269 (2000) and Snortland v. State, 615 N.W.2d 574 (N.D. 2000). Both cases are distinguishable from the Metz/Fisher continuing contract. The distinction is between a single wrong which has continuing effects and a series of independent, distinct wrongs. RDO Foods Co. v. United Brands International, Inc., 194 F. Supp.2d 962, 970, (D.N.D. 2002) In both New York and North Dakota (the jurisdictions relied

7

upon by Fisher), it is the rule that a separate cause of action arises on each missed installment payment. RDO at 969-971; Purpura v. Pizzurro, 77 N.Y.S.2d 599, 601 (1947).

The Metz/Fisher contract does not state the time when the per ton payments are required, but the parties agree the per ton price was paid monthly. BLACK'S LAW DICTIONARY 320 (7th ed. 1999) defines a "continuing contract" as one calling for periodic payments. "When a judgment is rendered, payable in installments, the statute begins to run against the judgment from the time fixed for the payment of each installment for the part then payable." Simmons v. Simmons, 290 N.W. 319, 320 (S.D. 1940). Simmons is a contempt case for allegedly failing to pay monthly alimony. In the absence of a South Dakota contract case construing the question, Simmons is the best indicator of the South Dakota Supreme Court's view. Simmons is consistent with the general view that a cause of action accrues from the time fixed for the payment of each installment. For a survey of illustrative cases, see 51 Am.Jur.2d, Limitation of Actions § 166.

Fisher historically made monthly payments. This contract is one to which installment contract statute of limitations principles apply. There is a fresh clock for the calculation of the statute of limitations period with each missed escalated payment. This contract is one in which the first missed, escalated payment was not a single wrong with continuing effects, but rather *each* missed escalated payment was an independent, distinct wrong. See RDO Foods Co. v. United Brands International, Inc., 194 F. Supp.2d 962, 970, (D.N.D. 2002). Metz Farms filed this action on April 27, 2005 (Doc. 1). Metz Farms' claims for breach or breaches of contract which occurred within six years before April 27, 2005 are not barred by S.D.C.L. § 15-2-13(1).

### (e) Waiver, Estoppel, and Laches Are Inapplicable

The burden to prove an affirmative defense rests with the party pleading the defense. Central Steel & Tube Co. v. Herzog, 203 F.2d 544, 548 (8th Cir. 1953). Fisher asserts waiver, estoppel and

8

laches as affirmative defenses which bar Metz's recovery as a matter of law. Fisher claims Metz's quiet acceptance of the monthly per ton compensation, together with the delay in commencing litigation bars its recovery. Because the parties agree the escalation clause was inadvertently overlooked, waiver and laches do not apply to the claims which are not barred by the statute of limitations. Ducheneaux, 488 N.W.2d 902, 911; State ex. rel. Bennett v. Peterson, 657 N.W.2d 698, 701 (S.D. 2003). Elements of waiver and laches include full knowledge, unreasonable delay, and prejudice to the other party. Id.

There are several types of estoppel. BLACK'S LAW DICTIONARY, 570-572 (7th ed 1999). For equitable estoppel, or estoppel in pais, false representations or concealment of material facts must exist and the party to whom the representation was made must have been without knowledge of the real facts, and the representation or concealment must have been made with the intention it should be acted upon. Selway Homeowners Ass'n v. Cummings, 657 N.W.2d 307, 315 (S.D. 2003). There can be no estoppel if any element is missing or if any element has not been proven by clear and convincing evidence. Id.

Fisher has supplied no facts in the record to show Metz knowingly ignored the escalation clause, or purposefully delayed litigation. Likewise, Fisher has not sufficiently explained how it has been prejudiced. Prejudice is not inferred from the mere passage of time. Culhane v. Michels, 615 N.W.2d 580, 585 (S.D. 2000). The non-movant must specifically delineate his defenses, either in his pleadings or by affidavit, to set forth specific facts which show there is a genuine issue for trial. Brown County Cooperative Assn. v. Rasmussen-King Cattle Co., 300 N.W.2d 265, 270 (S.D. 1980). Fisher has not made a sufficient showing that waiver, estoppel or laches are applicable in this case. See also Barnes v Wood, 750 P.2d 1226 (Utah App. 1988).

## CONCLUSION AND ORDER

It is ORDERED that Fisher's motion (Doc. 31) to dismiss Metz's complaint as a matter of law is GRANTED in part and DENIED in part. Claims for damages which occurred more than six years before April 27, 2005 are barred by S.D.C.L. § 15-20-13(1). Claims for damages which occurred within six years before April 27, 2005 are not barred.

It is FURTHER ORDERED that Metz's motion (Doc. 34) for partial summary judgment on the issue of liability is GRANTED for Fisher's breaches to adjust the price per ton per the escalation clause which occurred within six years before April 27, 2005 and the motion is otherwise DENIED. On the issue of damages, both parties will be allowed to introduce parol or extrinsic evidence to establish the parties' intention, or to establish the custom or usage in the trade when the term "consumer price index" was used in the escalation clause.

Dated this 17th day of April, 2006.

BY THE COURT:

John E. Simko
United States Magistrate Judge

ATTEST:

JOSEPH HAAS, Clerk

By: Shelly Margulies, Deputy
(SEAL)